**ROYAL SERVICES, INC., Appellant,**
**v.**
**MAINTENANCE, INC., Appellee.**
No. 22589.

United States Court of Appeals
Fifth Circuit.
May 17, 1966.

Albert S. C. Millar, Jr., Jacksonville, Fla., for appellant.

Ray W. Richardson, Jacksonville, Fla., Bryant, Freeman, Richardson & Watson, Jacksonville, Fla., of counsel, for appellee.

Before PHILLIPS,* JONES and BROWN, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge:

Royal Services, Inc.,[1] and Maintenance, Inc.,[2] at all times here material, were engaged in furnishing commercial janitorial services. In May, 1964, each submitted a bid to the United States Air Force, seeking the award of the custodial contract [3] for the McDill Air Force Base at Tampa, Florida, for the fiscal year July 1, 1964, to June 30, 1965.

The bid of Maintenance was lowest and the bid of Royal next lowest. The contract was awarded to Maintenance on June 25, 1964.

The contract is known as a "small-business set-aside contract" and only a small-business concern is eligible to bid for such a contract.

On July 2, 1964, Royal instituted this action against Maintenance, to recover profits in excess of $10,000, which it alleged it would have realized, had the contract been awarded to it.

In its original complaint, Royal alleged that a concern, to be a small business concern, must not have had average annual receipts [4] for its preceding three years in excess of $1,000,000, and that although Maintenance knew its average annual receipts for the preceding three fiscal years exceeded $1,000,000, it "misrepresented its annual receipts" to the Air

---

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called Royal.

2. Hereinafter called Maintenance.

3. Hereinafter referred to as the contract.

4. " 'Annual sales or annual receipts' means the annual sales or annual receipts, * * * of a concern * * * during its most recently completed fiscal year." SBA Rules and Regulations, Part 121 § 121.3–2(b).

Force and "thereby breached" its "self certification contract" with the Air Force.

The declared purpose of the Small Business Act [5] was to "aid, counsel, assist, and protect, * * * the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government * * * be placed with small-business enterprises * * * and to maintain and strengthen the over-all economy of the Nation." It was based on the declared premise that "[t]he essence of the American economic system of private enterprise is free competition"; that "[t]he preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation"; and that "[s]uch security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed." [6]

A small-business concern is defined in 15 U.S.C.A. § 632 and by the regulations prescribed by the Administrator of the Small Business Administration, pursuant to that section and 15 U.S.C.A. § 634(b) (2).

Such definition excludes from the phrase "small-business concern" a concern in the custodial and janitorial service industries, when it and its affiliates had average annual receipts for the three fiscal years preceding the bid in excess of $1,000,000; and it also excludes concerns owned or controlled by a parent company. The regulations provide that to own another company, the parent must control more than 50 per cent of the voting rights in that company, and that to control another company, the parent must be able to formulate, determine, or veto basic business policy decisions, but that majority stock ownership need not be present, and that such control may be exercised through dominant minority voting rights, use of proxy voting, contractual agreements, or otherwise.

To be permitted to bid on the contract, Maintenance was required to certify in writing to the Procurement Division of the Air Force that it was a small business concern, within the Rules and Regulations of the Small Business Administration.

Prior to the awarding of the contract, Royal filed a protest with the Regional Director of the Small Business Administration at Atlanta, Georgia, apparently based on the claim that the average annual receipts of Maintenance during the three fiscal years preceding the bid exceeded $1,000,000.

On June 8, 1964, the Regional Director found that Maintenance clearly fell within the applicable size standards, as provided in the Small Business Administration Rules and Regulations, and "therefore" qualified as an "eligible small business" concern for the purpose of bidding for the contract.

Royal appealed from such decision to the Director of the Office of Size Standards of the Small Business Administration, Washington, D. C. On July 29, 1964, such Director handed down his decision, in which he recited that the "facts submitted, * * * show that Maintenance has total average annual receipts for the preceding three fiscal years of less than $1 million" and held that Maintenance was a small-business concern.

The Director, also, obviously of his own volition, raised and considered the question whether Maintenance was controlled by a parent and found, upon a consideration of the facts, that Maintenance was not so controlled, directly or indirectly.

From the decision of such Director, Royal appealed to the Size Appeals Board of the Small Business Administration.

5. The Small Business Act, as amended, is classified in 15 U.S.C.A., Ch. 14A, §§ 631 to 647, inclusive.

6. 15 U.S.C.A. § 631.

That Board handed down its decision on August 17, 1964. It found that at the time of the bids the corporate structure of Maintenance was as follows:

| Name | Office Held | Shares Owned | % of Stock |
| --- | --- | --- | --- |
| Charles G. Taylor | President, Treasurer and Director | 24 | 24 |
| Glen F. Wise | Vice President and Director | 24 | 24 |
| Grady C. Loftin | Secretary and Treasurer | 22 | 22 |
| Jeff D. Loftin | Treasurer and Director | 22 | 22 |
| Fred M. Garner | | 8 | 8 |

It further found that Taylor and Wise could not control the action of the Directors, because they had only two votes and the Loftins had two votes; and the Loftins could therefore block any action by the Board of Directors and had a negative power of control; that Taylor and Wise could not by themselves control the action of the stockholders, since they owned less than 50 per cent of the stock; that the stock interest of the Loftins, being 44 per cent, was almost equal to that of Taylor and Wise, who held 48 per cent; that there was no evidence that Garner, who owned the remaining stock interest of 8 per cent was obligated to vote with Taylor and Wise; that the Loftins, because of family relationship and close business relationships, had a unity of interest.

It concluded that the Loftins had power to control Maintenance, and therefore Maintenance was affiliated with other concerns controlled by the Loftins.

At the hearing before the Size Appeals Board, counsel for Maintenance conceded that the estimated average annual receipts for the three fiscal years ending June 30, 1962, June 30, 1963, and June 30, 1964, would exceed an average of $1,000,000. But that period included the fiscal year ending June 30, 1964, which was not completed until after the certification in May, 1964, and was not one of the three fiscal years preceding the bid. See note 4, supra. There was no showing that the average annual receipts for the three fiscal years preceding the bid exceeded $1,000,000, or that the finding of the Director to the contrary, on a full consideration of the facts, was erroneous.

The Size Appeals Board found it unnecessary to decide the issue as to the size of Maintenance.

There was no showing in any of the administrative proceedings of any lack of good faith in the certification by Maintenance of its status as a small-business concern.

Moreover, the Comptroller General of the United States, in his decision of December 1, 1964, denying a protest of the award of the bid to Maintenance and a request for cancellation of the contract, made by Royal, expressly found: that "The record before us does not indicate that the certification made by Maintenance was imprudent or lacking in good faith"; and that "it would not be in the Government's best interest to require cancellation of the contract."

The Comptroller, in his decision, recited and applied ASPR 1–703, which in part here pertinent reads:

" * * * The controlling point in time for a determination concerning

the size status of a questioned bidder or offeror shall be the date of award, except that no bidder or offeror shall be eligible for award as a small business concern *unless he has in good faith represented himself as small business* prior to the opening of bids or closing date for submission of offers * * *." (Italics ours.)

On October 5, 1964, the trial court sustained a motion to dismiss the complaint and gave Royal leave to file an amended complaint. The amended complaint set out the decisions of the several administrative agencies of the Small Business Administration, referred to above. It omitted any allegation of knowingly made misrepresentations and made no allegation with respect to average annual receipts. As the gravamen of its claim, in the amended complaint it alleged that Maintenance "breached the provisions of this contract when it represented to the Government that it was not owned or controlled by a parent company and further breached its provisions in that it represented to the Government at the time of the submission of its bid that it was a small business concern when in fact, it was not," and in an amendment to the amended complaint alleged that "on or about May, 1964," Maintenance "negligently certified itself to the United States to be a small business concern for the purpose of bidding on" the contract "when in fact it was not a small business concern" and "as the sole and direct and proximate result of" such negligence, Maintenance "was awarded" the contract and but for such negligence Royal "would have been awarded" such contract.

On March 5, 1965, the trial court entered its order sustaining a motion to dismiss the amended complaint as amended and dismissing the action with prejudice.

■ Since the trial court sustained a motion to dismiss the amended complaint

as amended, we must, according the allegations thereof a liberal construction, accept as true the facts therein alleged.

■ However, since Royal saw fit to set forth in its amended complaint the findings, conclusions and decisions of the administrative agencies or officers before whom Royal challenged the small-business status of Maintenance, we may properly consider, also, such findings, conclusions and decisions. And since Royal pleaded the pendency of its petition to the United States General Accounting Office to cancel the contract, and its brief refers to the decision of the Comptroller General denying such petition, we think it also proper for us to refer to the findings, conclusions and decision of the Comptroller General.

■ It is true that the Size Appeals Board decided that Grady C. Loftin and Jeff D. Loftin had power to control Maintenance and therefore Maintenance was affiliated with other concerns controlled by the Loftins.[7] However, we think that on a consideration of the facts set forth in the decision of the Size Appeals Board, and upon which it based its conclusion that Maintenance was subject to the control of the Loftins, reasonable men, in the exercise of a fair and impartial judgment, might reach the opposite conclusion.

It is significant that the Director of the Size Standards Division found that at a Maintenance stockholders' meeting, held on March 24, 1964, a recommendation was presented and approved that Grady C. Loftin sell Taylor four shares of Maintenance stock and Jeff D. Loftin sell Wise four shares of such stock; that on June 24, 1964, for a valuable consideration, Taylor purchased four shares of such stock from Grady C. Loftin and Wise purchased four shares of such stock from Jeff D. Loftin; that on the same day the number of the Board of Directors of Maintenance was reduced from four to three and Taylor, Wise and

---

7. The Size Appeals Board made no finding of fact as to the average annual receipts of Maintenance for the *three fiscal years* *preceding its bid* and did not pass on the issue of size. (Italics ours.)

Grady C. Loftin became the Directors of Maintenance; and concluded that Maintenance was not controlled by the Loftins.

Those events and other facts disclosed in the records of the administrative proceedings afford a reasonable basis for a conclusion that Maintenance was not controlled by the Loftins in March and May, 1964.

ASPR 1–703 in part reads:

"1–703  Determination of Status as Small Business Concern.

\*    \*    \*    \*    \*    \*

"(b)  \* \* \*  no bidder  \* \* \* shall be eligible for award as a small business concern unless he has in good faith represented himself as a small business prior to the opening of bids \* \* \*."

■  We agree with the finding of the Comptroller General that the administrative "record before us does not indicate that the certification made by Maintenance was imprudent or lacking in good faith."

The amended complaint was filed after the decision by the Director of the Size Standards Division of the Small Business Administration had found the average annual receipts of Maintenance during the three fiscal years preceding its bid were less than $1,000,000, and after the Size Appeals Board had failed to pass on the issue with respect to such earnings for the three fiscal years preceding the bid.

This, we think, explains the reason that Royal, in the amended complaint and the amendment thereto, did not allege, as it had in the original complaint, that the average annual receipts of Maintenance for the preceding three fiscal years exceeded $1,000,000, and that Maintenance misrepresented its annual receipts to the United States Air Force Procurement Officer, and in its amended pleadings omitted any reference to average annual receipts of Maintenance.

We therefore conclude that Royal predicates its claim in its amended com-plaint on the asserted ground that Maintenance "breached the provisions of this contract when it represented to the Government that it was not owned or controlled by a parent company" and that Royal "is a third party beneficiary to the contract" and in the amendment to the amended complaint on the further ground that Maintenance "negligently certified itself to the United States to be a small business concern for the purpose of bidding on" the contract "when in fact it was not a small business concern."

Counsel for Royal assert that this is a diversity action and therefore the laws of Florida govern. They cite and rely upon McBurnette v. Playground Equipment Corp., Fla., 137 So.2d 563, 567, and quote from footnote 15 thereto, as follows:

"\* \* \*  the test is, not that the promisee is liable to the third person, or that there is some privity between them, or that some consideration moved from the third person, but that the parties to the contract intended that a third person should be benefited by the contract. It is the undertaking on the part of the promisor, as a consideration to the promisee, to benefit the third person, that gives rise to a cause of action by the beneficiary against the promisor, \* \* \*."

Thus, it will be seen that the test under Florida law is the intent of the parties to the contract that a third person shall be benefited by it.

■■  We shall assume, without deciding that test should be applied in the instant case. But in arriving at the intent of the parties to the contract, the United States Air Force and Maintenance, we must consider the pertinent provisions of the Small Business Act and the rules and regulations promulgated thereunder, in force at the time the bid was made and the contract awarded. The construction of those provisions, rules and regulations is a matter of federal, not state, law.

■ There is nothing whatever in the contract proper indicating an intent on the part of the United States that a next lower bidder should be benefited by any promise or undertaking therein by Maintenance.

■ If an incorrect statement was made by Maintenance in the certification accompanying its bid as to its status as a small-business concern from which its eligibility to bid was to be determined, it may have been an inducement to, but it was not a part of the contract proper. So, the narrow question presented by Royal's first contention is: Did Congress by the pertinent provisions of the Small Business Act and the rules and regulations promulgated thereunder and the requirement that a bidder prior to the opening of the bids make a good faith certification respecting his status as a small-business concern manifest an intent, in the event the certification was untrue and such bidder was awarded the contract, to give a cause of action against such bidder to the next lowest bidder for loss of profits?

■ We shall turn now to Royal's first contention. Clearly, there is no express provision in the Small Business Act or the rules and regulations promulgated thereunder giving a civil remedy to the second lowest bidder for loss of profits or for damages suffered because of an untrue statement made by the successful bidder in his certification respecting his status as a small-business concern, and we think no intent so to do may be implied therefrom.

■ The declared purpose of the Small Business Act is to preserve and expand full and free competition for the economic well-being and security of the Nation, by encouraging and developing the actual and potential capacity of small business, through aiding, counseling, encouraging, assisting and protecting the interests of small businesses. We think the purpose was public in character, viz., the preservation and expansion of full and free competition to insure the Nation's economic well-being and security, and that there was no intent to create civil rights of action in private persons.

In other legislation enacted by Congress to preserve free competition, and subjecting a violator to civil liabilities in actions by the United States and to criminal penalties, where Congress has seen fit also to give a civil right of action against a violator to a private person injured by the violation, it has done so in clear and unmistakable language.[8]

We think had Congress intended to give a civil remedy to the second lowest bidder against the lowest and successful bidder, because the latter made an untrue statement in his certification respecting his status as a small-business concern, it would have done so, either by express provision or by clear implication. It did not do so in the Small Business Act.[9]

■ Royal asserts in its brief a further basis for its claim, which it did not plead and apparently did not raise below, namely, that Maintenance violated 15 U.S.C.A. § 645(a), a penal section, and thereby gave rise to a civil action against it by Royal.

15 U.S.C.A. § 645(a) provides:

"Whoever makes any statement knowing it to be false, * * * for the purpose of influencing in any way the action of the Administration, * * * shall be punished * * *."

It indicates no Congressional intention whatever to create a civil remedy, either in behalf of the United States or a private person. What we have said regard-

8. 15 U.S.C.A. §§ 15 and 26. See also, Act of July 2, 1890, 26 Stat. 210 and Act of August 27, 1894, 28 Stat. 570.

9. Cf. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, and this court's analysis of the opinion in that case in Blaney v. Florida National Bank of Orlando (decided March 7, 1966), 5 Cir., 357 F.2d 27.

ing the Act as a whole, equally applies to § 645(a), supra.

Counsel for Royal does not argue the negligence theory set forth in the amendment to the amended complaint.

We affirm.