**TECTONICS, INC. OF FLORIDA and Forest Builders, Inc., Plaintiffs-Appellants,**

v.

**CASTLE CONSTRUCTION COMPANY, INC., a/k/a Alabama Castle Construction Company, Inc., Collins Company, Inc., etc., et al., Defendants-Appellees.**

No. 83–7370.

United States Court of Appeals, Eleventh Circuit.

Feb. 21, 1985.

Donald V. Watkins, Montgomery, Ala., for plaintiffs-appellants.

Thomas S. Lawson, Jr., Montgomery, Ala., for Collins Const. Co.

Charles M. Allen, II, Montgomery, Ala., for Castle Const. Co. and Algernon Blair, Inc.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In February 1982, Tectonics, Inc. of Florida and Forest Builders, Inc. (Tectonics) filed a complaint in the Southern District of Florida against Castle Construction, the Collins Company and Algernon Blair, Inc. with regard to the bidding on a small business set-aside contract. Jurisdiction was based on diversity of citizenship. The defendants succeeded in an attempt to re- move the case to Alabama where the district court dismissed the case for failure to state a claim upon which relief could be granted. This appeal followed.

The question presented by Tectonics' appeal is whether a second low bidder can maintain separate state causes of action for damages against a low, successful bidder of a federal contract, when the latter company has misrepresented itself as a small business as defined in 15 U.S.C.A. § 631(a) and regulations issued pursuant thereto by the Small Business Administration.

The United States Corps of Engineers issued an invitation for bids on a contract for construction at Red Stone Arsenal in Alabama. The invitation was limited to bids from small businesses as defined by the federal statute just mentioned. Tectonics, Inc. of Florida and Forest Builders, Inc. as joint venturers certified that they were small businesses within the statute and were the second lowest bidder for the construction contract. The defendant Collins Company, Inc. (Collins) gave a similar certificate to the Corps and was the successful bidder on the contract. Tectonics did not make a bid protest because it had relied upon Collins' misrepresentation that it was a small business. Later as a result of a protest filed by another company regarding a different construction contract, the Small Business Administration (SBA) decided that Collins was not a small business as defined by federal law. After becoming aware of this determination, Tectonics filed its complaint.

The complaint alleges that defendants Castle Construction Company, Inc. and Algernon Blair, Inc. provided 80% of Collins' original capitalization, indemnified the surety under the performance and bid bonds, provided employees to provide the bid estimates, and placed their corporate officers as directors of Collins. The complaint alleges that the defendants by so doing fraudulently misrepresented Collins as a small business company and thereby prevented Tectonics from being the successful bidder of the contract. The complaint seeks recovery on theories of fraud

and deceit, unjust enrichment, and interference with a business relationship, and seeks compensatory and punitive damages.[1]

The issues presented by this appeal are as follows: (1) Do the facts as alleged in the complaint state a cause of action under Alabama law? (2) In enacting the statute, did Congress provide a private cause of action for a second low bidder under facts as alleged by the appellants in their complaint? (3) If Alabama law provides a cause of action and Congress did not provide a private cause of action pursuant to the statute, does the federal law preempt the state law and deny a second low bidder an action for damages against the successful low bidder? (4) Did the former Fifth Circuit in its opinion in *Royal Services, Inc. v. Maintenance, Inc.*, 361 F.2d 86 (5th Cir. 1966), hold that federal law preempted such a cause of action in a state court and thereby become precedent for our decision in this case pursuant to this circuit having adopted Fifth Circuit case law prior to October 1, 1981 pursuant to *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981)?

The district court dismissed Tectonics' complaint holding "[t]hat Congress did not intend to give a civil remedy to the second lowest bidder against the lowest and successful bidder." (Dist.Ct.Op. p. 5). The district court believed that *Royal, supra,* was controlling. We agree with the district court that Congress did not intend to provide a civil private cause of action to the second lowest bidder under facts such as

alleged here. However, we do not interpret the congressional legislation or the federal constitutional supremacy clause to preempt a state remedy under these facts, if a remedy is permitted, and we do not construe *Royal, supra,* as so holding. Finding that a party is not precluded from asserting such a cause of action if it is permitted pursuant to Alabama law, we reverse the district court.

## I. DOES *ROYAL* CONTROL?

■ In *Royal*, plaintiff alleged in a similar fashion that the defendant successful low bidder was not a qualified small business pursuant to the governing statute, and that defendant's ill-gotten contract with the United States Air Force permitted a diversity action under the laws of Florida whereby Royal could sue as a third-party beneficiary. The court in *Royal* defined the question presented as: "Did Congress ... manifest an intent, in the event the certification [by the low bidder] was untrue and such bidder was awarded the contract, to give a cause of action against such bidder to the next lowest bidder for loss of profits?" Further, the court said: "... we think no intent so to do may be implied therefrom [the statute]." *Royal, supra,* at 92. The court found under Florida law a third-party beneficiary could recover from one of the parties to a contract only if the contract disclosed an intention that the plaintiff have a cause of action. Finding no intent, the court held that the plaintiff had no cause of action. These two holdings were the basis of the *Royal* decision.

1. The claim of fraud alleges that if it had not been for the material misrepresentation made by Collins that it was a small business that the contract in question would have gone to the plaintiffs. Tectonics alleges that the misrepresentation was intentional and that the company has relied upon it to their detriment.

The claim of unjust enrichment alleges that the defendants in the action had received money and benefits in the form of profits from the contract. Tectonics claims that it would be inequitable to allow the defendants to retain the benefits of the misrepresentation by the Collins Company that it was a small business.

The claim of interference with a business relationship alleges that Tectonics had a business relationship with the Corps of Engineers by virtue of the company's past successful bidding

and satisfactory performance of government construction contracts. The defendants by contrast were aware that Collins was not a small business and that the size of Collins and resources available to it from the other companies would give Collins an economic advantage over other businesses bidding for the project. Castle and Algernon Blair allegedly aided Collins by providing the surety for and preparing the bid, by providing corporate officers and financial capitalization and by agreeing not to give this information to other small businesses or to the government.

Tectonics claims that it could raise these causes of action under Florida or Alabama law. Since this case was removed to Alabama, on remand the district court must consider whether these causes of action will lie there.

We adopt the following paragraph stated by the court in *Royal:*

> The declared purpose of the Small Business Act is to preserve and expand full and free competition for the economic well-being and security of the Nation, by encouraging and developing the actual and potential capacity of small business, through aiding, counseling, encouraging, assisting and protecting the interests of small businesses. We think the purpose was public in character, viz., the preservation and expansion of full and free competition to insure the Nation's economic well-being and security, and that there was no intent to create civil rights of action in private persons.

*Royal, supra,* at 92.

The fact that Congress did not create a private cause of action by manifesting an intent that the second lowest bidder would have a cause of action under facts such as alleged here,[2] does not mean that a cause of action may not be maintained under state law. We shall discuss this aspect of the law in the next section of the opinion. First, however, we must complete the discussion of the *Royal* opinion.

The court in *Royal* points out that the plaintiff had alleged a theory of recovery based upon negligence but that this was not briefed and the court did not consider such a theory. Further, the court mentioned that Royal did not include in its complaint but did assert in its brief that it had a claim pursuant to the federal false statement penal statute contained in 15 U.S.C.A. § 645(a). The court went on to point out that this criminal statute indicated no congressional intention to create a civil remedy in behalf of the United States or a private person and stated that what it had said with respect to the Small Business Act applied also to § 645(a). Thus, our construction of the opinion in *Royal* is that it goes no further than holding that Congress did not intend to create a private cause of action pursuant to the Small Business Act or pursuant to the federal false statement penal statute.

## II. DOES THE SMALL BUSINESS ACT OR THE UNITED STATES CONSTITUTION PREEMPT A STATE CAUSE OF ACTION?

We are required to go beyond the question answered in *Royal, supra,* which

---

**2.** The dissent construes *Royal Services* to hold that Congress intended to preempt a state cause of action when it enacted the SBA. The decision must be read in the context in which the panel was deciding the case. The plaintiff sought relief as a third party beneficiary of the contract between the United States and the defendant. The panel stated after quoting Florida law: "Thus, it will be seen that the test under Florida law is the intent of the parties to the contract that a third person shall be benefited by it." *Id.* at 91. The court then made the analysis quoted by the dissent at page 965. The panel's analysis and conclusion that Congress did not intend a private cause of action was to explain the approval of the district court's holding that the complaint failed to state a cause of action under Florida law. This conclusion stemmed from an initial finding that there was no intent on the part of the government to benefit a third party (next lowest bidder) when contracting with the lowest bidder. *Id.* at 92. Thus, the third party beneficiary claim under Florida law failed because the Small Business Act had not provided the necessary element of intent. However, *Royal* cannot be properly read as preempting state causes of action arising from violations of the Act. This view is bolstered by two cases referred to by the court in its discussion, *J.I. Case Co. v.*

*Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); and *Blaney v. Florida National Bank of Orlando,* 357 F.2d 27 (5th Cir.1966). *See Royal* at 92 n. 9. In *Case* the Supreme Court held that Congress in the Securities Exchange Act intended to create a private federal cause of action whereby holders of securities could sue a corporation which had breached the Act. In *Blaney,* the court writing through Chief Judge Tuttle held that the plaintiff did not have a private federal cause of action pursuant to regulations promulgated by the Board of Governors of the Federal Reserve System, pointing out that Congress had not intended such a cause of action when it enacted the Federal Reserve Act. The court was careful to point out that it was merely holding that in the absence of diversity our court lacked jurisdiction because there was not a federal cause of action, but that plaintiff could pursue a cause of action under state law. *Id.* at 28, 30. The majority agrees with the dissent that Congress did not intend to create a private cause of action, which was the holding of *Royal Services.* It is just as clear that neither Congress nor our court in *Royal Services* forbade a plaintiff seeking relief based on fraud to pursue that claim under state law.

merely held that the Small Business Act did not create a private cause of action. The court in *Royal* thus presaged the holding in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Cort* and its progeny have laid down guiding principles to assist in deciding when Congress intended the remedy of a private cause of action to derive from the violation of a federal statute. *Cort,* although denying a federal private cause of action to parties injured as a result of the violation of the federal statute involved therein, nevertheless held that it was entirely appropriate for the plaintiffs to seek any remedy created by state law.

Nevertheless, there are instances where federal legislation can preempt any state cause of action. For example, in *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Supreme Court observed that "state law can be preempted in either of two general ways." *Id.* 104 S.Ct. at 621.

■ First, if it is Congress' intent to occupy a given field, then any state law within that field is preempted. *Id.; see also Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Thus, Congress may preempt state authority to act by using explicit preemptive language in a statute. *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Absent explicit preemptive language, Congress' intent to supersede state law altogether may be inferred because: (1) the scheme of the federal law is so pervasive that the reasonable inference is that Congress left no room for the states to supplement it; (2) the field in which the federal law touches is one where the federal inter-

est is so dominant that it will be assumed to preclude the enforcement of state laws on the same subject; or (3) the object that is sought to be obtained by the federal law and the character of the obligations imposed by it reveal a strong federal purpose. *Pacific,* 103 S.Ct. at 1722; *Fidelity,* 102 S.Ct. at 3022.

Second, where "Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, ... or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood,* 104 S.Ct. at 621 (citations omitted).

■ We now examine the Small Business Act, which has the purpose of preserving and expanding "full and free competition for the economic well-being and security of the Nation, by encouraging and developing the actual and potential capacity of small business, through aiding, counseling, encouraging, assisting and protecting the interests of small business." *Royal,* 361 F.2d at 92.[3]

To effectuate the purposes of the Act, the Small Business Administration and the contracting procurement or disposal agency are required to give small businesses preferential treatment with respect to "set-aside" contracts. *See* 15 U.S.C.A. § 644. Bidders are also permitted to challenge the status of any other bidder by filing a written protest with the government contracting officer within the appropriate time limits. *See* 13 C.F.R. § 121.3–5 (1984).

As early as 1958, it was recognized that the programs of the SBA were "by no means a *complete answer* to the problems of small businesses ...." Pub.L. 85–536,

---

**3.** Section 631 of the Small Business Act provides in pertinent part:

It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government ... be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the over-all economy of the Nation.

15 U.S.C.A. § 631(a).

85th Cong.2d Sess., *reprinted in* 1958 U.S. Code Cong. & Ad.News 3071, 3074 (emphasis added). Similarly, an examination of the statutory scheme and legislative history of the Small Business Act leads us to conclude that Congress did not intend to occupy the entire field of small business concerns to the extent that all state remedies would be foreclosed for neither the statute nor the applicable regulations expressly preclude state action in this field or dictate preemption. *Cf. Automated Medical Laboratory v. Hillsborough County,* 722 F.2d 1526, 1530 (11th Cir.1984) ("Preemption of state law by federal statute or regulation is not favored in the absence of persuasive reasons.").

This, however, does not end our analysis for as noted in *Silkwood* even if Congress has not *expressly* preempted the area, a remedy based on state law will be precluded if it conflicts with the Small Business Act or if it is an obstacle to the accomplishment of the purposes and objectives of the Act. In *Silkwood,* the Supreme Court indicated:

> We do not suggest that there could never be an instance in which the federal law would preempt the recovery of damages based on state law. But insofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the federal government has so completely occupied the field of safety that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law.

*Silkwood,* 104 S.Ct. at 626.[4]

Therefore, we now determine (1) whether the SBA prevents a state cause of action based upon the Act as a standard in determining whether the appellees have either committed fraud, been unjustly enriched or interfered with a business relationship and (2) whether the maintenance of such an action would result in an irreconcilable conflict between the federal and state standards or frustrate the objectives of federal law.

As indicated earlier, the policy of the Small Business Act is to encourage free competition and the development of small businesses, and to ensure that small businesses receive a fair proportion of government contracts. *See* 15 U.S.C.A. § 631. Another "primary goal [is] to assure that government contracts [are] performed in a timely and competent manner." *Iconco v. Jenson Const. Co.,* 622 F.2d 1291, 1298 (8th Cir.1980).

Allowing this suit will neither result in an irreconcilable conflict between federal and state standards nor frustrate the aforementioned objectives. Rather, allowing the suit to proceed will be consistent

---

**4.** *Silkwood* is particularly helpful in consideration of this case and the preemption position taken by the dissent. Mrs. Silkwood's estate was awarded $10,000,000 for punitive damages which verdict was reversed by the Court of Appeals for the Tenth Circuit, 667 F.2d 908 (10th Cir.1981). The Supreme Court described the holding of the court of appeals as follows:

> In reaching its conclusion with respect to the punitive damages award, the Court of Appeals adopted a broad preemption analysis. It concluded that "any state action that competes substantially with the AEC (NRC) in its regulation of radiation hazards associated with plants handling nuclear material" was impermissible. 667 F.2d at 923. Because "[a] judicial award of exemplary damages under state law as punishment for bad practices or to deter future practices involving exposure to radiation is not less intrusive than direct legis-

lative acts of the state," the court determined that such awards were preempted by federal law. *Id.* 104 S.Ct. at 620. The United States as amicus curiae contended that the award of punitive damages was preempted because it conflicted with the federal remedial scheme, contending that the NRC is authorized to impose penalties on licensees when the federal standards have been violated. In response to this contention, the Supreme Court said:

> However, the award of punitive damages in the present case does not conflict with that scheme. Paying both federal fines and state-imposed punitive damages for the same incident would not appear to be physically impossible. Nor does exposure to punitive damages frustrate any purpose of the federal remedial scheme.

104 S.Ct. at 626.

with and promote the achievement of the goals and policies of the Act. As stated in *Iconco*:

> If a contract set aside for small businesses has been performed by a concern that is not small, the intent of Congress has not been advanced. Allowing an unsuccessful bidder to recover on unjust enrichment and fraud theories, when the proof justifies such recoveries, is *consistent with the salutary purpose of the Act.*

*Id.* at 1298 (emphasis added).

The appellees argue that to allow a state cause of action for a violation of a federal law would disrupt the bidding process. This has been noted by one of the courts when it determined that a private cause of action for lost profits or similar actions cannot be inferred from the provisions of the Small Business Act. *See Savini Construction Co. v. Crooks Brothers Construction Co.*, 540 F.2d 1355, 1358–59 (9th Cir.1974). The *Savini* court stated:

> Had [the bidder] known that, ... it would be subject to a suit for profits, it might well have declined to accept the award. Or, having accepted, it might have refused to continue to work on the contract following the Size Appeals Board determination that it was originally ineligible to bid. The likelihood that one such event would occur is substantial. And the occurrence of any would undermine the Congressional intent to

insure competency in the execution of government contracts....

*Id.* at 1358–59. We disagree with the *Savini* court's dictum. As in *Iconco v. Jenson Const. Co., supra,* we find that "[t]he mere threat of legal action, without more, is not sufficient ... to discourage either the submission of bids or the acceptance of a contract award." *Id.* at 1299. "The *only* effect of a judgment for the plaintiff is to deprive [the] defendant of a benefit which ... Congress never intended it to have." *Id.* (emphasis added).

By allowing a state cause of action, if it is permitted under state law, we do not imply that relief would be permissible under all circumstances. For example, if the plaintiff were seeking an injunction to stop the performance of a government contract we might well have a different view. That issue is not before us. The critical question is whether the maintenance of the cause of action will be disruptive to the full performance of an established government contract. If it will seriously disrupt the performance of the contract, the action should not be maintained. Here the appellees have not established that the cause of action will affect the performance of this contract. Speculation that the maintenance of the action will either alter the contractual obligations between the appellees and the government or prevent the contract from being fully completed is not sufficient to deny the sufficiency of plaintiffs' complaint.[5]

---

5. The dissent at page 967 raises the question as to whether there is a conflict between the federal scheme and plaintiffs' cause of action. Perhaps the dissent overlooks that we have the case on the grant by the district court of defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. We reiterate that if the defendant can establish that the cause of action conflicts with the interest of the government, it has the right to plead that and the district court can consider it at the appropriate time. We specifically reject the holding in *Savini Construction Co. v. Crooks Brothers Construction Co.*, 540 F.2d 1355 (9th Cir.1974), relied upon by the dissent. The dissent urges that *Savini* was correct in holding that a damages remedy conflicted with the Small Business Act when it said:

> Had Crooks Brothers [the low bidder] known that, depending on the post-award outcome of

the size appeal, it would be subject to suit for its profits, it might well have declined to accept the award.

*Id.* at 1359. If the low bidder knows that it is not an eligible small business concern entitled to a government contract, it well knows that it is subject to a suit for damages growing out of fraud, as is brought here. If it does not know that, it is the holding of the majority that it should know. We see no justiciable or conscionable reason for permitting a large business to establish a bogus corporation which it controls, have it meet the definition of a small business company, and secure a government contract to which the large company would not be entitled if it followed the law. We see no difference in a bidder who has been deprived of a contract through the fraud of a non-eligible company having a cause of action than Mrs. Silkwood's estate having a cause of action to

Thus, we hold that Congress, by enacting the Small Business Act, did not preempt the field so as to preclude a state cause of action based upon the Act as a standard in determining whether the actions of fraud, unjust enrichment or interference with a business relationship are available to a second low bidder against a low successful bidder of a federal contract when the latter has misrepresented itself as a small business.

### III. WHETHER A STATE CAUSE OF ACTION IS AVAILABLE UNDER ALABAMA LAW

A state court is " 'free to look to the provisions of a federal statute for guidance in applying its longstanding common-law remedies' unless Congress has prohibited the state from looking to the statute's provisions as a standard in determining whether there has been a common-law breach of duty." *Hofbauer v. Northwestern National Bank of Rochester, Minnesota*, 700 F.2d 1197, 1201 (8th Cir.1983) (citing *Iconco, supra*); *see also Iconco, supra*. As we have pointed out, the Small Business Act does not itself create a federal cause of action. However, it does not *prevent* a state court from finding fraud, unjust enrichment or interference with a business relationship where there has been a violation of the statute.

As this issue was not addressed by the district court, we do not address it on appeal. On remand, the district court must determine whether the Supreme Court of Alabama would use the Small Business Act as a standard in determining fraud, unjust enrichment or interference with a business relationship.

REVERSED and REMANDED.

GODBOLD, Chief Judge, dissenting:

This is a subtle case because of the interplay of *Royal Services, Inc. v. Mainte-nance, Inc.*, 361 F.2d 86 (5th Cir.1966), which is binding upon us, traditional principles of preemption, and policies of federalism and comity. Added to this are matters of effective judicial administration involving certification of an issue to a state supreme court.

### I. *Royal Services, Inc.*

It is unquestioned that there is no private federal cause of action for violation of the Small Business Act and the regulations thereunder. Also it cannot be questioned that heretofore Alabama has not by statute or decision incorporated into its body of tort law a right in one bidder to sue another bidder for violation of provisions of the Small Business Act. Nevertheless, plaintiff contends that the standards of conduct created by the Act, if broken, give rise to a tort action under Alabama law. *Royal Services* seems to me to hold to the contrary.

The plaintiff in *Royal Services* was a second low bidder, like plaintiff here, suing the successful bidder on the ground that the successful bidder had misrepresented to the government its status as a small business concern. Plaintiff asserted two grounds: first, that, based on Florida law, plaintiff was the third-party beneficiary of the contract between the low bidder and the government (in which contract defendant had made the alleged misrepresentation), and, second, defendant had negligently miscertified itself. On appeal plaintiff did not argue the negligence theory, and the court did not consider it.

With respect to the claim based on alleged third-party beneficiary status, the Fifth Circuit looked to Florida law to find its test for determining when there is a third-party beneficiary relationship, and found that Florida used an "intent" test. 361 F.2d at 91. The court assumed without deciding that this was the proper test to be applied. *Id.* To find the answer to the

recover for punitive damages as was approved by the Supreme Court in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). We do not suggest in the slightest that the defendant company in this case was guilty of any wrongdoing whatsoever. We merely say that if the plaintiffs' allegations are true, plaintiffs have a cause of action which is not preempted by the Small Business Act.

intent issue the court looked to the contract and the Small Business Act and the regulations thereunder. The court held that the construction of the Act and the regulations was a matter of *federal,* not state, law. The *federal* court examined these *federal* sources and, as a matter of *federal* law, concluded that they evidenced no intent to create a cause of action. No federal cause of action was involved in the case or under discussion; the only cause of action alleged and the only cause of action discussed was the state law cause of action for breach of contract as asserted by a third-party beneficiary. Thus, the court's decision was that no state-law civil cause of action was intended to be created. The court said:

> Did Congress by the pertinent provisions of the Small Business Act and the rules and regulations promulgated thereunder and the requirement that a bidder prior to the opening of the bids make a good faith certification respecting his status as a small-business concern manifest an intent, in the event the certification was untrue and such bidder was awarded the contract, to give a cause of action against such bidder to the next lowest bidder for loss of profits?

> We shall turn now to Royal's first contention. Clearly, there is no express provision in the Small Business Act or the rules and regulations promulgated thereunder giving a civil remedy to the second lowest bidder for loss of profits or for damages suffered because of an untrue statement made by the successful bidder in his certification respecting his status as a small-business concern, and we think no intent so to do may be implied therefrom.

> The declared purpose of the Small Business Act is to preserve and expand full and free competition for the economic well-being and security of the Nation, by encouraging and developing the actual and potential capacity of small business, through aiding, counseling, encouraging, assisting and protecting the interests of small businesses. We think the purpose was public in character, viz., the preservation and expansion of full and free competition to insure the Nation's economic well-being and security, and that there was no intent to create civil rights of action in private persons.

*Id.* at 92.

While the *Royal Services* court did not employ the word "preemption" as a word of art, its conclusions answer authoritatively the traditional steps in a preemption analysis, discussed in Part II below. The only difference between *Royal Services* and this case is that one second low bidder sued on a contract theory under Florida law and the other second low bidder sued on a tort theory under Alabama law. The majority correctly says that in *Royal Services* the court was answering the question whether in enacting the Small Business Act Congress intended to confer such a benefit on a second low bidder that it could, as third party beneficiary of the contract between the government and the low bidder, sue the low bidder. The court answered that question "No." What is important is the reason the court gave for answering in the negative. As set out above in the quoted material from the decision, after discussing the general purposes of the Act the court gave its reason (which does not even appear in the majority opinion in this case). It was:

> We think had Congress intended to give a civil remedy to the second lowest bidder against the lowest and successful bidder, because the latter made an untrue statement in his certification respecting his status as a small-business concern, it would have done so, either by express provision or by clear implication. It did not do so in the Small Business Act.

361 F.2d at 92. In short, the intent element required by Florida law for a third-party beneficiary suit was not present because Congress did not intend to give a civil remedy to the second low bidder. The majority does not explain why it makes a difference that the state court civil remedy under examination was a suit on contract while in the present case the civil remedy under examination is a suit in tort.

## II. Preemption

Under traditional preemption analysis, the federal law concerning right to sue for violation of the Act or the regulations preempts state law, and there can be no state cause of action. This court recently set out the steps in a preemption analysis. *Automated Medical Laboratories, Inc. v. Hillsborough County,* 722 F.2d 1526 (11th Cir.1984). Initially the court must ascertain whether there is "any explicit declaration of congressional design to displace state regulation." *Id.* at 1530. The parties do not suggest any such declaration in the Small Business Act or in the legislative history.

Finding no explicit intent, "we must next examine Congress's implicit intent in enacting the federal scheme." *Id.* There are three tests for determining whether Congress has implicitly preempted state law, only one of which need be satisfied for preemption to exist:

First, is the federal scheme "so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it." *Id.* at 1531. Federal regulation of federal government contracts and procurement is pervasive and comprehensive. Among the areas regulated by statute and agency rules are who can submit bids, when they are to be submitted, whether there are to be set-asides for small businesses and minority contractors, how bids are to be evaluated, the discretion the government agency has to select among competing bids, the procedures for challenging competing bidders, and the standards for determining eligibility of bidders. As an example, 13 C.F.R. contains 41 pages of regulations on the topic "Small Business Size Standards." These regulations determine eligibility of small businesses to bid on business contracts such as the one at issue. They provide for the initial determination of eligibility, a competitor's method of protest, procedure for investigating informally evaluating compliance with eligibility compliance, appeals procedures, and sanctions for bidding when not eligible. 13 C.F.R. § 121 *et seq.* (1983). With this wide scope and specificity, it is reasonable to conclude that Congress has occupied the field and has left no room for state regulation of the federal procurement process.

Second, is the area "a field in which the federal interest is so dominant that the federal system must be assumed to preclude" state enforcement? The government interests in this area are uniquely federal. One such interest is the need to have work performed for the government on a timely basis, at the least expensive cost possible, by competent contractors. All federal procurement regulations are targeted at achieving this goal. The goal is sometimes tempered by other federal concerns such as assisting small business in gaining a share of the market and thereby promoting competition and aiding minority businesses in attaining a fair share of government contracts. But even these are federal interests, attainable under Congress's commerce clause powers or its civil rights authority.

When Congress has these mixed goals of procurement and assistance to selected businesses, the balance to be struck between these goals is a *federal* question. The *federal* government has a strong interest in seeing that the groups prescribed for set-asides are aided, while at the same time the government's interest that its contracts be awarded and performed in an efficient manner is not injured. In choosing between certainty on eligibility for small business set-asides and speed in having contracts performed, Congress has explicitly struck that balance by specifying that a bidder's certification will be binding on a specific contract unless a protest by a competitor is filed on a timely basis and contains adequate factual allegations concerning the bidder's ineligibility. Congress has decided that it would rather have a business later found to be ineligible perform small business set-aside work than to delay performance by permitting late challenges. In light of these factors, it is reasonable to conclude that Congress has preempted the field on procurement contracts and eligibility for small business set-asides.

Third, is there a conflict between the federal scheme and the challenged state regulation? Some of the courts that have considered whether there is a private right of action under federal law against a competing bidder have addressed the issue of whether an action for damages would conflict with the federal scheme. They have concluded that it would. *E.g. Savini Construction Co. v. Crooks Brothers Construction Co.*, 540 F.2d 1355 (9th Cir.1974); *Mid-West Construction Co. Ltd. v. U.S.*, 181 Ct.Cl. 774, 387 F.2d 957 (1968); *Northland Equities, Inc. v. Gateway Center Corp.*, 441 F.Supp. 259 (E.D.Pa.1977). These conclusions apply here, because there is no difference between a federal damages remedy and a state damages remedy if the ultimate question is whether such a remedy conflicts with the goals of the federal scheme.

*Rogers v. Ray Gardner Flying Service, Inc.*, 435 F.2d 1389 (5th Cir.1970) is factually similar to the present case, but different in analysis. The result is, however, the same. Plaintiff contended that Oklahoma state law, under which negligence of a bailee of an airplane would not be imputed to the bailor, had been widened by a provision of the Federal Aviation Act that arguably imposed bailor liability. The Fifth Circuit analyzed the issue in terms of whether Congress intended to preempt the state law of bailments to the extent of expanding its scope. The court stated its disbelief that Congress would undertake to alter the tort laws of numerous states in so oblique a fashion and found no intent to supersede state laws of bailments as related to operation of airplanes. The court remanded the case for entry of summary judgment for defendant. Whether one examines preemption in an affirmative manner, asking whether the federal scheme occupies the field and therefore excludes state regulation, as I have done, or in a negative manner, as in *Rogers*, asking whether there is an absence of congressional intent to expand by federal statute an unoccupied area of state law, the result is the same in this case. We know from *Royal Services* that Congress did not intend a state right to recover based upon violation of the Act.

In *Savini Construction Co.*, the court pointed to one of the conflicts created by a damages remedy.

Had Crooks Brothers [the low bidder] known that, depending on the post-award outcome of the size appeal, it would be subject to suit for its profits, it might well have declined to accept the award. Or, having accepted, it might have refused to continue work on the contract following the Size Appeals Board determination that it was originally ineligible to bid. Finally, although Crooks Brothers might have continued to execute the contract, serious problems of quality and speed of work could have arisen given the possible deprivation of profits at the conclusion of the project.

540 F.2d at 1359. In this case the possible harm to the low bidder is even more speculative and difficult to ascertain in advance of bidding, because, unlike *Savini*, the plaintiff here did not even file a size protest on a timely basis. The low bidder here had no notice of its possible liability to Tectonics until suit was filed. To permit the interjection of Alabama's tort law to create this additional burden on federal bidders erects a hurdle to the accomplishment of the federal scheme.

*Northland Equities, Inc. v. Gateway Center Corp.*, 441 F.Supp. 259 (E.D.Pa. 1977), concerned an attempt by an unsuccessful bidder under federal procurement procedures to assert a federal cause of action on the ground that the successful bidder had failed to comply with bid specifications. The court, in granting summary judgment for defendant, considered *Savini Construction* and the analogy of rejection of claims of unsuccessful bidders under the Small Business Act.

The rejection of SBA claims, despite a clear congressional expression of concern for the welfare of small businesses, strongly suggests the impropriety of creating a private action for damages under the procurement laws. By deterring unsuccessful bidders from acting at an ear-

ly date to overturn an award, such a policy would similarly frustrate existing enforcement mechanisms under the procurement statutes. Presently, an unsuccessful offeror has several available methods by which he can challenge an award which he believes was improperly made. He can file a protest with the contracting officer who is required to consider all protests submitted before or after an award is made (41 C.F.R. §§ 1–2.–407–8); he can file a protest with the General Accounting Office (GAO), where the Comptroller General must investigate the award and issue a report affirming or voiding the award (4 C.F.R. §§ 20.0–.10); and finally, he can seek judicial review of the award and injunctive relief in federal court.

441 F.Supp. at 259. Like administrative procedures are available to plaintiff in the present case. The *Northland* court went on to hold:

> Now, years after the 1971 award to Gateway, plaintiff seeks lost profits, bid costs and punitive damages. While this court by no means wishes to condone possible fraud, neither does it want to encourage possible speculative plaintiffs to wait until a building is constructed and inhabited before attacking the propriety of the initial award. This would wreak havoc on procurement. In order to be compatible with statutory goals, a remedial scheme must guarantee that the bidder will act at a time when the proper bidder can still be selected. By telling the unsuccessful bidder that he may wait until after his competitor has performed and then sue to recover possible lost profits, the courts would provide an irresistible disincentive to his coming forth at an earlier time. Any award goes into the private pocket of the unsuccessful bidder, not into the public treasury, even though the government suffers by not having procured the most advantageous bid.

> It is judicious to consider not only the ill effect on procurement, but also the strain on the effectiveness of the already burgeoning federal court system, before ascribing to Congress the intention to open up a new right of private action. Having thoroughly considered this issue, this court finds that a private cause of action for damages and lost profits under the procurement statutes cannot be implied.

441 F.Supp. at 263–64.

All three of the tests for preemption laid out in *Automated Medical* are satisfied in this case, though only one need be satisfied, which means that federal law preempts. 722 F.2d at 1533.

The majority follows the opinion of the Eighth Circuit in *Iconco v. Jensen Const. Co.*, 622 F.2d 1291, 1298 (8th Cir.1980). That case affirmed a judgment in favor of the second low bidder against the low bidder, on state law grounds of fraud and unjust enrichment, based upon miscertification by the low bidder of its small business status. The Eighth Circuit held that Iowa was free to look to the Small Business Act for standards to apply in fashioning its common law. It examined the Small Business Act and found nothing in the statutory and regulatory schemes to support an implied prohibition against a state doing this. This is precisely the opposite of the finding of Congressional intent that the Fifth Circuit had reached in *Royal Services*. The Eighth Circuit did not overlook *Royal Services*. Rather it addressed *Royal Services* and specifically considered and rejected the holding of the Fifth Circuit that implying a private action by an unsuccessful bidder against a successful one was inconsistent with Congressional intent:

> To the extent, however, that the language used in those cases [*Royal Services* and *Savini Construction*] supports the conclusion that any private suit by an unsuccessful bidder against a successful one is inconsistent with Congressional intent and would jeopardize the proper administration of the government's contract procurement system, we respectfully disagree for the reasons we have stated.

622 F.2d at 1299. Having rejected the *Royal Services* finding of Congressional intent, the court adopted an opposing construction of Congressional intent. *Id.* Moreover, the Eighth Circuit misread *Royal Services* as involving only the issue of whether a federal cause of action could be inferred from the Act. *Id.* As we have pointed out above, the case concerned the existence of a Florida cause of action. This court is bound by *Royal Services.* It is not free to reject it and to climb aboard a decision by another circuit that has reached an opposing conclusion and rejected *Royal Services'* basis for decision as well.

### III. The state law "window"

What the majority seems to say is that Alabama is free to incorporate into its tort law a cause of action for breaches of duties set out in the Small Business Act, and the decision remands the case to the district court for it to decide whether Alabama has or will make such a choice. In an abstract sense Alabama can, of course, incorporate into its tort law whatever breaches of duty it perceives accord with its state policies, so long as not barred by the Supremacy Clause. But in this instance *Royal Services* has decided that the *federal* policy is that the federal statute, statutory scheme and regulations did not intend to create a private state cause of action. If there is a non-preempted "window" left for a state-law cause of action, created as a matter of state policy, it is a narrow one at best. Under our system of federalism, where comity is important and federal-state systems have a decent regard for each other and for each other's views and policies, it seems to me doubtful that a state would create a new area of tort liability by incorporating into its common law of torts provisions of a federal statute when the federal court of the circuit in which the state is located has held that in enacting the stat-

ute Congress did not intend a private state cause of action. This would bring state policy into collision with federal policy. The possibility reinforces that this court's decision on preemption is incorrect.

### IV. Certification, Comity and Federalism

If this court follows neither *Royal Services* nor traditional preemption analysis, then this case is a paradigm for certification by this court to the Alabama Supreme Court. If that court responds that there is no state cause of action, the matter will be at an end.[1] Rather than take this direct and straightforward approach the court remands to the district court for it to decide whether there is an Alabama cause of action. This is an anomalous assignment for a federal court when decision of this new state-law issue necessarily implicates the extent to which the state, as a matter of comity, wishes to give effect to expressed federal interests. Under Alabama certification procedures the federal district court can certify the cause of action question to the Alabama Supreme Court, and I hope that it will consider doing so. Should the district court decide the issue for itself without certifying to the Alabama Supreme Court, regardless of how it decides, we can predict what will happen. The case will come back to this court on a second appeal, and this court will then have to revisit the question of whether we should certify the question to the Alabama Supreme Court. Surely this additional circumlocution is unnecessary.

---

1. If this court chose to certify, it would not need to address the preemption issue until we learn from the authoritative source, the state supreme court, whether a cause of action exists. If none exists we will not have cluttered up the law books and fly-specked the law by a discussion, which will have become hypothetical at best, concerning whether federal law preempts a non-existent state cause of action. If the Alabama court responds that there is a state cause of action, we could then address the preemption question bearing in mind the contours and scope of the cause of action that the state court has defined.