Charles A. **BLANEY** et al., Appellants,

v.

**FLORIDA NATIONAL BANK AT OR-LANDO** et al., Appellees.

No. 22229.

United States Court of Appeals
Fifth Circuit.

March 7, 1966.

Robert Dyer, George T. Eidson, Jr., Akerman, Senterfitt, Eidson, Mesmer & Robbinson, Orlando, Fla., for appellants.

Fred H. Kent, Clarence G. Ashby, Haywood M. Ball, Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, Fla., for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and FISHER, District Judge.

TUTTLE, Chief Judge:

Appellants (plaintiffs below) brought this action individually, and as representatives of a class comprised of the holders of ten per cent mortgage bonds, issued pursuant to a trust indenture agreement by Fischer-Electro-Magnetics, Inc., a now bankrupt corporation. The complaint alleges improper action by appellee-bank (and its Trust Officer) as trustee under said indenture agreement. In light of our disposition of the case, we do not elaborate upon the specific acts which appellants urge as a breach of the bank's fiduciary obligations as trustee, other than to note the substantiality of their claim. It should be noted, however, that the trust indenture contained an exculpatory clause, purporting to limit the trustee's liability to "gross neglect of its duties hereunder or for failure to exercise good faith in the performance hereof." In holding, as we do, that appellants' complaint does not state a federal claim, we are mindful of the possibility that the Florida courts may give effect to this exculpatory clause, thus rendering non-compensable an otherwise actionable breach of fiduciary duty on the part of the bank. See Smith v. Boyd, 119 Fla. 481, 161 So. 381 (1935).

A threshold problem faces this court in light of the disposition of this case below. The district court's dismissal for lack of diversity or "other jurisdictional grounds" was improper in light of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 13 A.L.R.2d 383 (1946). This latter case teaches that where a complaint is drawn, as here, to seek recovery directly under the Constitution or laws of the United States, a federal court must entertain the suit "to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy," id. at 682, 66 S.Ct. at 776, unless 1) the alleged federal claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or 2) the claim is wholly insubstantial and frivolous. Ibid. However, in the interest of economy of judicial time and effort, this court expressly declines to remand on this ground. Rather, we proceed to determine whether, as a matter of law, appellants' claim states a federal cause of action—a question which "must be decided after and not before the court has assumed jurisdiction over the controvesy." Ibid.

Appellants premise their claim for relief upon the following regulation promulgated by the Board of Governors of the Federal Reserve System, pursuant to its authority under former 12 U.S.C. § 248(k) (repealed Sept. 28, 1962):[1]

"Every such national bank shall conform to sound principles in the operation of its trust department."

---

[1]. Upon the repeal of 12 U.S.C. § 248(k), the jurisdiction of the Board of Governors of the Federal Reserve System over trust departments of national banks was transferred to the Comptroller of the Currency. 12 U.S.C. § 92a. Subsequently the Comptroller promulgated Regulation 9, which superseded Regulation F, see 12 C.F.R. Part 9, and which contains a regulation exactly corresponding to 12 C.F.R. § 206.6(f), i. e., 12 C.F.R. § 9.6(f) (1963 ed.), and footnote 2 thereto. Since it appears from the complaint that substantially all of the events allegedly creating liability on the part of the bank occurred while 12 C.F.R. § 206.6 (f) was in effect, we feel that appellants were correct in basing their claim primarily thereupon. Nevertheless, to whatever extent appellants must base their claim for relief upon 12 C.F.R. § 9.6(f), our holding also applies *pro tanto* to this latter regulation.

12 C.F.R. § 206.6(f) (1961). [Footnote 5 to this subsection "commended" to banks operating trust departments the statement of "principles" of trust institutions approved by the Executive Council of the American Bankers Association (Appendix to Regulation F of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 206 at p. 35 et seq.).] Appellants ask this court to imply from Section 206.6(f) a federal civil remedy in their favor, as holders of securities subject to the trust indenture administered by appellee. Such an implied cause of action would be based upon the bank's failure to "conform to sound principles in the operation of its trust department." Thus, in effect, we are invited to fashion a federal common law of "sound" trust principles pursuant to "authorization" found in an innocuous administrative regulation. We decline this invitation.

Our conclusion is based partially upon the most recent Supreme Court pronouncement on implying civil remedies from federal regulatory statutes, J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). There the plaintiff alleged that defendant-corporation, by seeking support for a merger through circulation of a false and misleading proxy statement, in violation of Section 14(a) of the Securities Exchange Act and regulations issued pursuant thereto, had deprived shareholders of their pre-emptive rights. The question as put by the Court was whether Section 27 of the Securities Exchange Act [2] authorized a federal cause of action for rescission or damages, based upon such an alleged deprivation.

The approach of the Supreme Court in allowing such a private cause of action is illuminating. First, it noted that Section 27 is broad in its terms, granting to appropriate district courts jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created" by the Act. Second, it emphasized the broad remedial purposes of the Section 14(a) and the proxy rules issued pursuant thereto—purposes expressly noted in the Act itself. Third, it implicitly noted that both the stockholders and the corporation were within the group sought to be protected by the proxy rules. Fourth, it concluded that "[p]rivate enforcement * * * provides a necessary supplement to Commission action," Borak at 432, 84 S.Ct. at 1560, especially since "[t]ime does not permit an independent examination of the facts set out in the proxy material and this results in the Commission's acceptance of the representations contained therein at their face value * * *." Ibid. Under these circumstances, the Court held that a private remedy existed.

▆ Measuring the circumstances involved in this case by the general approach of the Supreme Court in Borak, we readily observe that appellants, as security holders, are within the class of persons sought to be benefited by the banking regulation. In our opinion, however, the similarity ends at this point. Unlike Section 27 of the Securities Exchange Act (footnote 2, supra), the section which prescribes specific liabilities

2. Section 27, 15 U.S.C. § 78aa, provides in relevant part:

"The district courts of the United States, the Supreme Court of the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

for violations of the Federal Reserve Act (Title 12, U.S.C., Chapter 3), speaks in narrow terms, as follows:

"Should any national banking association in the United States now organized fail within one year after December 23, 1913, to become a member bank or fail to comply with any of the provisions of this chapter applicable thereto, all of the rights, privileges, and franchises of such association granted to it under chapter 2 of this title, or under the provisions of this chapter, shall be thereby forfeited. Any noncompliance with or violation of this chapter shall, however, be determined and adjudged by any court of the United States of competent jurisdiction in a suit brought for that purpose in the district or territory in which such bank is located, under direction of the Board of Governors of the Federal Reserve System by the Comptroller of the Currency in his own name before the association shall be declared dissolved. In cases of such noncompliance or violation, other than the failure to become a member bank under the provisions of this chapter, every director who participated in or assented to the same shall be held liable in his personal or individual capacity for all damages which said bank, its shareholders, or any other person shall have sustained in consequence of such violation.

Such dissolution shall not take away or impair any remedy against such corporation, its stockholders, or officers, for any liability or penalty which shall have been previously incurred."

12 U.S.C. § 501a.[3] Thus, solely as a matter of statutory construction, we would hold the remedies enumerated in Section 501a to be exclusive.[4]

■ Furthermore, we doubt seriously whether the national trust regulations were motivated by the broad remedial purposes underlying the Securities Exchange Act; they were primarily designed, rather, to place national banks on an equal competitive basis with state banks and trust companies in the state where the national bank is situated. This is obvious from the most cursory reading of repealed 12 U.S.C. § 248(k), now 12 U.S.C. § 92a. For this same reason, since we are not dealing with broad, remedial social legislation, we feel justified in concluding that Congress intended regulatory controls to be exercised solely by the Board of Governors (or the Comptroller, today), without room or need for supplementary enforcement. Cf. Consolidated Freightways v. United Truck Lines, 216 F.2d 543, 547 (9th Cir. 1954).

■ In our conclusions we are reinforced by a basic feeling that the law of trusts and estates, like the law of domestic relations, see DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L. Ed. 1415 (1956), is primarily a matter of state concern. See United States v. Yazell, January 17, 1966, 86 S.Ct. 500, (family property interests are "intensely local"). That Congress, too, recognized this fact seems obvious from the provisions of 12 U.S.C. § 92a itself, making the right of national banks to act as trustees, executors, administrators or in any other fiduciary capacity turn upon the law of the state in which such national bank is located [see also former 12 U.S.C. Section 248(k)]. The areas in which the federal courts have recently returned to "the free-wheeling days antedating Erie R. Co. v. Tompkins * * * are few and restricted," Wheeldin v.

---

3. To whatever (if any) extent appellants must base their claim for relief upon Regulation 9 of the Comptroller of the Currency, 12 C.F.R. § 9.6(f), see footnote 1, supra, their claim is cast under the National Banking Act, and, accordingly, 12 U.S.C. § 93, rather than 12 U.S.C. §

501a, will become applicable. Since 12 U.S.C. § 93 also speaks in narrow terms, it is indistinguishable from 12 U.S.C. § 501a for purposes of our analysis.

4. It should be noted that appellants here sue the bank and its trust officer—not its directors.

Wheeler, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963), and should remain so. Accordingly, we hold that appellants' complaint does not state a federal cause of action.

The judgment is affirmed because of the failure to allege a state of facts upon which relief could be granted.