

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-1994

# IN RE: Corestates Trust

Precedential or Non-Precedential:

Docket 93-2039

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"IN RE: Corestates Trust" (1994). *1994 Decisions*. Paper 170.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/170

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-2039

_____


IN RE:  CORESTATES TRUST FEE LITIGATION

CORNELIA TODD HARRISON BYRD;
HOWARD W. HARRISON, III
Individually and on behalf of
all others similarly situated

v.

CORESTATES BANK, N.A.

Howard W. Harrison, III and James D. Robins*,
<u>Appellants</u>

*  Pursuant to FRAP 12(a)

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 92-cv-05526)

_____


Argued:  May 20, 1994

Before:  BECKER, LEWIS, <u>Circuit</u> Judges
and IRENAS, <u>District</u> <u>Judge</u>*

(Filed  October 27, 1994 )


MARGUERITE R. GOODMAN (Argued)
One Old Gulph Center
111 Old Gulph Road
Wynnewood, PA   19096

_____

*.  The Honorable Joseph E. Irenas, United States District Judge
for the District of New Jersey, sitting by designation.

Attorney for Appellants


               GREGORY M. HARVEY (Argued)
               KAREN PIESLAK POHLMANN
               Morgan, Lewis & Bockius
               2000 One Logan Square
               Philadelphia, PA    19103

               Attorneys for Appellee


_____

**OPINION OF THE COURT**
_____


BECKER, Circuit Judge.


    Plaintiffs Howard W. Harrison, III and James D. Robins,
beneficiaries of fiduciary accounts administered by defendant
Corestates Bank, N.A. ("Corestates"), commenced this action in
the District Court for the Eastern District of Pennsylvania on
their own behalf and on behalf of all those similarly situated.
Plaintiffs allege breach of contract and fiduciary duty by
Corestates and correspondingly seek refund of allegedly
unreasonable trust fees and removal of Corestates as trustee.
Jurisdiction was premised on both diversity of citizenship, 28
U.S.C. § 1332, and the putative existence of a federal question
based upon violations of the banking laws, 12 U.S.C. § 92a and
applicable regulations.

    The district court dismissed the diversity claim for lack of
subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), concluding
that neither the plaintiffs' claim for punitive damages nor their

allegation that the defendants had mismanaged a trust res worth more than $50,000 sufficiently augmented their otherwise minimal claims to satisfy the amount in controversy requirement of the diversity statute. The court dismissed the federal statutory claim, concluding that no private right of action exists for violations of 12 U.S.C. § 92a. The plaintiffs appealed the district court's order of dismissal, but we agree with the district court in both respects, and hence we will affirm.

## I. **FACTS AND PROCEDURAL HISTORY**

Corestates functions as a trustee for a multitude of trusts, managing and investing principal and/or income in exchange for fees. In order to maximize the return on the trust funds, Corestates "sweeps" the fiduciary accounts on a daily basis; "sweeping" refers to the automated collection of idle cash from customer accounts for purposes of temporary collective investment. Corestates transfers the uninvested cash from each account to a temporary collective investment fund. At relevant times, Corestates has charged sweep fees of 60 basis points ($.60 for every $100 of invested cash) for the "service" of sweeping. App. at 33a. In addition, Corestates has imposed an annual regulatory compliance charge of $600 for trusts with principal in excess of $50,000 ($300 for those with less than $50,000 of principal). App. at 19a.

The plaintiffs are beneficiaries of trusts administered by Corestates which are subject to these fees. They allege that Corestate's imposition of the fees constitutes a breach of contract and a breach of fiduciary duty under applicable Pennsylvania law. More specifically, plaintiffs allege Corestates has violated 20 Pa. C.S.A. § 7315.1(b), which permits a Pennsylvania fiduciary to make only a "reasonable charge for services rendered in making [a] temporary investment." Harrison seeks compensatory damages of $2,474.88 ($1,874.88 of sweep fees plus the $600 regulatory compliance fee). Robins seeks compensatory damages of $713.97 ($113.97 of sweep fees plus the $600 regulatory compliance fee). App. at 45a. Because these amounts are far less than the $50,000 required for diversity jurisdiction, plaintiffs assert that the jurisdictional amount is achieved either (1) via their claim for punitive damages; and/or (2) because the value of the trust res, which they allege the trustees have been mismanaging, exceeds the jurisdictional amount. Although plaintiffs have also brought this action "on behalf of all those similarly situated," they have not sought (and therefore have not obtained) class action certification.

In addition, plaintiffs contend that Corestate's imposition of the above mentioned fees constitutes a violation of regulations promulgated pursuant to 12 U.S.C. § 92a. More specifically, plaintiffs contend that a federal private right of action exists for Corestates' alleged regulatory violations. As

we have noted, the district court was unpersuaded on both of plaintiffs' theories, and dismissed the case. This appeal followed.

The existence vel non of subject matter jurisdiction is a legal issue over which we exercise plenary review. York Bank & Trust Co. v. Federal Savings & Loan Ins. Corp., 851 F.2d 637, 638 (3d Cir. 1988), cert. denied 488 U.S. 1005 (1989). So is the existence of a private right of action. See Unger v. National Residents Matching Program, 928 F.2d 1392, 1394 (3d Cir. 1991). In making these legal determinations, all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true. See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

## II. JURISDICTIONAL AMOUNT

Diversity jurisdiction requires an amount in controversy exclusive of interest and costs in excess of $50,000. 28 U.S.C. § 1332(a). In determining whether the jurisdictional amount has been has been properly alleged:

> [T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. . . . But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89, 58 S. Ct. 586, 590 (1938) (citations omitted).  Even in diversity-based class actions, the Supreme Court has held that class members may not aggregate their claims in order to reach the requisite amount in controversy, Snyder v. Harris 394 U.S. 332, 338, 89 S. Ct. 1053, 1057 (1969), and that each member of the class must claim at least the jurisdictional amount, Zahn v. International Paper Co., 414 U.S. 291, 301, 94 S. Ct. 505, 512 (1973).  A fortiori, the plaintiffs may not aggregate their claims in an action pursued on behalf of "those similarly situated."

A.    Punitive Damages

Whether a sufficient amount in controversy exists to establish federal diversity jurisdiction depends, in part, on whether punitive damages are recoverable under Pennsylvania law. Unfortunately, we lack the benefit of direct guidance from the Pennsylvania Supreme Court in this area.  Therefore this court must attempt to "predict the position which that court would take in resolving this dispute."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 364 (3d Cir. 1990).

In Packard v. Provident Nat'l Bank, 994 F.2d 1039 (3d Cir. 1993), cert. denied, 114 S. Ct. 440 (1993), we were presented with the identical question of Pennsylvania law -- whether the imposition of unreasonable sweep fees by a bank acting as a

trustee can result in the imposition of punitive damages. The district court in Packard found that sweep fees, imposed at a lower rate then presented here, were unreasonable and in violation of applicable Pennsylvania laws, grounding diversity jurisdiction on an award of punitive damages in the amount of $75,000. Upp v. Mellon Bank N.A., 799 F. Supp. 540 (E.D. Pa. 1992). On appeal, predicting what the Pennsylvania Supreme Court would do, we concluded that "punitive damages simply cannot be recovered against a trustee under Pennsylvania law." Id. at 1048. We are bound by the holding of this previous panel "in the absence of a clear statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law." Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1343 (3d Cir. 1990), cert. denied 499 U.S. 966 (1991); see also Third Circuit Internal Operating Procedure 9.1 (requiring that no subsequent panel of this court overrule the holding of a prior panel contained in a published opinion so as to avoid an intra-circuit conflict of precedent).

The Pennsylvania Supreme Court has not addressed the issue since that time (nor has the Pennsylvania Superior Court).

Calgon does not allow us to examine this issue anew, but instead requires us to determine whether opinions of inferior state courts subsequent to Packard represent persuasive evidence of a change in Pennsylvania law. In determining that punitive damages were not available, the Packard court relied in part on

Freedman Estate, 1 Fid. Rep. 2d 60 (O.C. Allegheny Co. 1980) (en banc), which held that punitive damages were not available against a trustee.  Plaintiffs contend that two later trial court opinions -- Lemke Trust 13 Fid. Rep. 2d 328 (O.C. Dauphin Cty. 1993) and Korman Corp. v. Franklin Town Corp., 34 D & C 3d 495 (C.C.P. Phila. Cty. 1984) (both holding, contrary to the opinion in Freedman Estate, that punitive damages were available against a trustee) -- which were not considered by Packard[1] constitute persuasive evidence of a change in Pennsylvania law.

We find that these cases do not represent a change in Pennsylvania law, and certainly not a sufficient evidence of a change to satisfy Calgon.  See Calgon, 917 F.2d at 1343.  In Calgon this court refused to overrule a prior panel's prediction that the employment-at-will doctrine existed in Pennsylvania notwithstanding two subsequent direct statements to the contrary by members of the Pennsylvania Supreme Court, one in dicta, and the other in a concurrence by Chief Justice Nix.  Id. (requiring instead a "clear statement by the Pennsylvania Supreme Court to the contrary").  Given the absence in our case of such persuasive evidence of a change in Pennsylvania law, we find that punitive damages are not available against Corestates.  Thus plaintiffs' claim for punitive damages does not establish an amount in controversy in excess of $50,000.

[1].  The Lemke decision arose after Packard, while the Korman case, decided before Packard, was apparently not called to the attention of the Packard panel.

B.    Value of the Trust Res

Plaintiffs seek removal of Corestates as trustee pursuant to 20 Pa.C.S.A. § § 3173, 7121 which allow removal in the case of a breach of fiduciary duty.  They submit that their request to enjoin Corestates from charging excessive fees in the future places the corpus of their trusts, each in excess of $50,000,[2] into controversy.  They distinguish our opinion in Packard since in that action injunctive relief against the future imposition of allegedly excessive fees was not sought.

In injunctive actions, it is settled that the amount in controversy is measured by the value of the right sought to be protected by the equitable relief.  See Smith v. Adams, 130 U.S. 167, 175, 9 S. Ct. 566, 569 (1889); Spock v. David, 469 F.2d 1047, 1052 (3rd Cir. 1972) ("In cases where there is no adequate remedy at law, the measure of jurisdiction is the value of the right sought to be protected by injunctive relief."), rev'd on other grounds Greer v. Spock, 424 U.S. 828 (1976).  In other words, "it is the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined that is the yardstick for measuring the amount in controversy." 14A C. Wright et al. Federal Practice and Procedure, § 3708 at 143-44 (2d ed. 1985) (citations omitted).

_____

[2].  Harrison's trust is valued at $902,844, Robin's at $98,741. App. at 50a.

The Supreme Court applied this principle in McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S. Ct. 780 (1936), where the plaintiff sought to enjoin the enforcement of an allegedly unconstitutional regulation of its business.  The Court held that the amount in controversy was not, as the plaintiffs contended, the entire value of the business, but instead the value of the right to be free of the particular regulation, which "may be measured by the loss, if any, which would follow the enforcement of the rules prescribed."  Id. at 181, 56 S. Ct. at 781.

While some support would appear to exist for plaintiffs' contention that the entire corpus of a trust is placed in controversy where a breach of fiduciary duty is alleged, see Urbano v. Board of Managers of New Jersey State Prison, 415 F.2d 247, 249 n.8 (3d Cir. 1969) ("Although we do not decide the issue, there is support for the proposition that where a breach of fiduciary duty is alleged, the corpus of the trust is the amount in controversy."), cert. denied 397 U.S. 948 (1970), it is the logic of McNutt that we find applicable to this case.  In McNutt the Supreme Court made clear that the amount in controversy in an injunctive action is measured by the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined.  The value to the plaintiffs in this action therefore is the cost to them of the continued imposition of the allegedly excessive sweep fees.  The cost of

these fees to date has not exceeded $2500.  The plaintiffs are unable to set forth any calculation establishing that the continued imposition of such fees would bring a sum in excess of the jurisdictional amount into controversy.

In reserving the question of the measurement of the amount in controversy in the case of an allegation of a fiduciary breach, the Urbano panel was apparently concerned with an alleged fiduciary breach that could place the entire corpus of a trust in jeopardy.  In Urbano, prison inmates alleged a fiduciary breach on the part of prison officials in the administration of trust funds on behalf of the inmates, asserting that the officials were using the trust money for their own benefit.  Urbano 415 F.2d at 249.  Given these allegations, the prisoners apparently could have successfully alleged that the continued fiduciary breach on the part of prison officials placed the entire trust corpus into jeopardy.  The Urbano panel never reached this question because it instead dismissed the case on the basis of abstention.  Urbano, 415 F.2d at 250.  In contrast, plaintiffs in the case at bar have failed to allege in any way a breach of fiduciary duty which threatens an amount of the trust corpus in excess of $50,000.  Unlike Urbano, plaintiffs do not seek protection from any alleged conduct on the part of Corestates which threatens the entire trust corpus.  Plaintiffs only seek protection from the continued imposition of sweep fees, which alone do not threaten an amount in excess of $50,000 per plaintiff.

In addition to contending that Corestates' future actions somehow threaten the entire trust corpus, the plaintiffs argue that title to the entire trust is in controversy by the mere equitable request for removal of the trustee. The plaintiffs contend that, because a trustee holds legal title to the trust corpus, a request for removal of a trustee is equivalent to a suit brought to determine title to property. We disagree. Corestates, while vested of legal title, does not claim ownership of the entrusted funds. See Restatement (Second) of Trusts § 2 comment (d) (1959) ("The term 'title,' unlike 'ownership' is a colorless word; to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as trustee."). The cases cited by the plaintiffs all involve situations where the real equitable ownership of property was at stake, not mere legal title. See, e.g., Sanchez v. Taylor, 377 F.2d 733 (10th Cir. 1967) (holding that in a suit seeking a declaration of title the amount in controversy is governed by the value of the property). Since the equitable ownership of trust property is not at issue, we conclude that plaintiffs' injunctive request does not place the jurisdictional amount into controversy.

In sum we conclude that plaintiffs' requested injunctive relief does not, to a legal certainty, place an amount in excess of $50,000 into controversy. The mere request for removal of a trustee does not place the entire trust corpus into controversy;

instead plaintiffs must seek by way of an injunction protection from an activity which threatens in excess of $50,000 of the trust corpus.  Plaintiffs have failed to allege any such conduct on the part of Corestates.

### III.  DOES AN IMPLIED RIGHT OF ACTION EXIST FOR VIOLATIONS OF REGULATIONS PROMULGATED PURSUANT TO 12 U.S.C. § 92a?

Section 92a provides that the "Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee. . . ."  12 U.S.C. § 92a.  Plaintiffs have pled violations of regulations promulgated pursuant to § 92a, namely 12 C.F.R. § 9.15 which allegedly requires a bank to charge a reasonable fee when sweeping, and 12 C.F.R. § 9.18(b)(12) which places limits on the amount a bank can charge to a collective investment fund.  Plaintiffs contend that a cause of action exists for violations of § 92a and corresponding regulations by way of the private right of action which has been implied into 12 U.S.C. § 93(a) for violations of the National Bank Act.  See Chesbrough v. Woodward, 244 U.S. 72, 37 S. Ct. 579 (1916).  Alternatively, plaintiffs maintain that a private right of action exists independently under § 92a.

We do not write on tabula rasa.  The First and the Fifth Circuits have already written – and divided – on the question

whether a private implied right of action exists for violations of § 92a and accompanying regulations.  In B.C. Recreational Indus. v. First Nat'l Bank, 639 F.2d 828, 833 n.10 (1st Cir. 1981), the First Circuit posited in dicta that an implied right of action could be found to exist through § 93 "for violations of the National Bank Act, including § 92a(a)."  The B.C. Indus. court failed to fully consider, however, whether § 92a was in fact enacted as part of the National Bank Act.  In Blaney v. Florida Nat'l Bank, 357 F.2d 27 (5th Cir. 1966), the Fifth Circuit, in a more detailed analysis, concluded that a private right of action did not exist for violations of § 92a.  The Blaney court failed to consider, however, the possibility that a private right of action could exist through § 93(a).  As will be seen, the relationship of § 92a to § 93(a) and the National Bank Act is dispositive.

A.  Can a Private Cause of Action Exist Through § 93(a) for a Violation of § 92a Regulations?

The plaintiffs maintain that a cause of action exists for violations of § 92a and corresponding regulations by way of the private right of action which has been implied into § 93(a).  See Chesbrough v. Woodward, 244 U.S. at 78, 37 S. Ct. at 582 (finding an implied private cause of action under the predecessor to § 93(a)).  Section 93(a) provides in pertinent part that if "the directors of any national banking association shall knowingly violate or knowingly permit . . . [a] violat[ion] . . . [of] any

of the provisions of title 62 of the Revised Statutes [the National Bank Act] . . . [such] director . . . shall be held liable. . . ."  12 U.S.C. § 93(a).

The implied right of action under § 93(a), first established by the Supreme Court in Chesbrough, has been recognized and applied to various provisions of the National Bank Act.  See Morast v. Lance, 807 F.2d 926, 932 (11th Cir. 1987); Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 243 (2d Cir. 1985); Marx v. Centran Corp., 747 F.2d 1536, 1540 (6th Cir. 1984), cert. denied 471 U.S. 1125 (1985); Harmsen v. Smith, 542 F.2d 496, 499-500 (9th Cir. 1976), cert. denied 464 U.S. 822 (1983).  It should be noted, however, that the implied private right of action recognized in Chesbrough relates only to § 93(a), given that until 1978, Section 93 of the National Bank Act consisted only of the paragraph which is now § 93(a).  Whether an implied right of action exists for an alleged violation of § 92a via the implied right of § 93(a) will depend upon whether § 92a was enacted as part of the National Bank Act.[3]  Section 92a was enacted on September 28, 1962 as Public Law 87-722 in order to transfer regulatory authority over the fiduciary operations of national banks from the Federal Reserve Board to the Comptroller

---

[3].  If we were to determine that § 92a were part of the National Bank Act, it is unclear whether a private right of action could exist through § 93(a) for violations of regulations promulgated under § 92a.  Since we determine that no private right of action exists for violations of § 92a, we need not address this question.

of the Currency, repealing § 11(k) of the Federal Reserve Act (which was codified at 12 U.S.C. § 248). <u>See</u> Public Law 87-722, 76 Stat. 668 (enacting § 92a while repealing § 11(k) of the Federal Reserve Act and explicitly amending two sections of the Internal Revenue Code). While designated by the editors of the U.S. Code as 12 U.S.C. § 92a, the enacting legislation and accompanying legislative history did not amend, repeal or even mention the National Bank Act. The fact that the legislation specifically amends two sections of the Internal Revenue Code, underscores the lack of Congressional intention that § 92a function as an amendment to the National Bank Act.

Moreover, later enactments refer to § 92a not as part of the National Bank Act, but as the Act of September 28, 1962. <u>See</u> Act of March 31, 1980, Pub L. 96-221, Title VII § 704, 94 Stat. 187 (1980) (codified as 12 U.S.C. § 92(a)(k)); Garn-St. Germain Depository Institutions Act of 1982, Pub. L. 97-320, Title IV § 424(g), 96 Stat. 1523 (1982) (codified as an amendment to 12 U.S.C. § 93(b)) (referring to "the provisions of Title 62 of the Revised Statutes [the National Banking Act] <u>or</u> any of the provisions of section 92a of this title" (emphasis added)). For these reasons, we find that § 92a was not enacted as part of the National Bank Act, and hence we conclude that no private cause of action exists through § 93(a) for a violation of § 92a regulations.

B.  No Implied Right of Action Exists under § 92a.

Since § 92a was not enacted as part of the National Bank Act, a private right of action can only exist for violations of regulations promulgated under § 92a if a right of action can be implied under § 92a pursuant to the Supreme Court's four factor test of Cort v. Ash, 422 U.S. 66, 95 S. Ct. 2080 (1975).  In deciding whether an implied right of action exists for a violation of regulations, we must first determine "whether the statute under which the rule was promulgated properly permits the implication of a private right of action . . . under Cort v. Ash and its progeny."  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 947 (3d Cir. 1985), cert. denied 474 U.S. 935 (1985).[4]  Obviously, the regulations cannot themselves aid in answering the question whether a private right of action exists under the enabling statute.  See Smith v. Dearborn Financial Services, Inc., 982 F.2d 976, 979 (6th Cir. 1993); Marshall v. Gibson's Products, Inc., 584 F.2d 668, 677-78 & n. 16 (5th Cir. 1978) (holding that an implied private cause of action can be implied only from a statute and not from regulations, since the authority to create federal jurisdiction lies solely with Congress).

---

[4].  In order to imply a private cause of action for a regulatory violation, we would also have to conclude both that (1) the regulation was properly within the scope of the enabling statute, and (2) the private right of action would further the purpose of the enabling statute.  Angelastro, 764 F.2d at 947.

Under Cort v. Ash we are required to examine four factors in determining whether to imply a private right of action under a federal statute: (1) whether plaintiffs are part of the class for whose especial benefit the statute was enacted; (2) whether there was any indication of Congressional intent to deny or create a private remedy; (3) whether implication of a private remedy is consistent with the underlying purpose of the statute; and (4) whether the matter is traditionally one relegated to the states. Cort v. Ash, 422 U.S. at 78, 95 S. Ct. at 2088. Courts that have already considered the matter, have concluded that "it is doubtful that plaintiffs could meet the test of Cort v. Ash" in establishing an implied private right of action under § 92a. B.C. Indus., 639 F.2d at 833 n.10; Thompson v. Kerr, 555 F. Supp. 1090, 1098 (S.D. Ohio 1982).

Supreme Court precedent has established that the second Cort v. Ash factor, legislative intent, is entitled to the greatest weight in the calculus. Touche Ross & Co. v. Redington, 442 U.S. 560, 575, 99 S. Ct. 2479, 2489 (1979). Specifically, a lack of evidence of legislative intent to create a private right of action, either express of by implication, can by itself provide the answer that a private right of action should not be implied. See Touche, 442 U.S. at 571-76, 99 S. Ct. at 2486-89 ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.").

The legislative history accompanying § 92a and its predecessor is void of any indication that Congress intended to create a private remedy. No court had ever recognized a private right of action under the predecessor statute to § 92a,[5] and in enacting § 92a, Congress explicitly stated that "[n]o change would be made from the substantive provisions of section 11(k) [the predecessor statute of the Federal Reserve Act] other than the transfer of authority, so that there is no alteration of existing law regarding national banks acting in fiduciary capacities." 87th Congress, 2d Sess., S Rep. No. 2039, 1962 U.S. Code Cong. & Ad. Rep. 2735; see also Investment Co. Institute v. Camp, 401 U.S. 617, 621-22, 91 S. Ct. 1091, 1094 (1971) ("In 1962 Congress transferred jurisdiction over most of the trust activities of national banks from the Board of Governors of the Federal Reserve System to the Comptroller of the Currency, without modifying any provision of substantive law."). Given that no private cause of action existed under § 92a's predecessor and Congress expressly intended not to change the substantive law, we conclude that Congress did not intend to create a private cause of action when it enacted § 92a.

An evaluation of the remaining three Cort v. Ash factors also leads us to decline to recognize a private right of action.

---

[5]. The predecessor statute, 12 U.S.C. § 248 (formerly § 11(k)) vested the authority to regulate the fiduciary operations of national banks with the Federal Reserve System's Board of Governors.

First, no indication exists that plaintiffs are part of a class for whose especial benefit the statute was enacted. Congress enacted the predecessor to § 92a merely to place national banks on equal footing with state banks in the performance of trust functions. Blaney, 357 F.2d at 30 ("This is obvious from the most cursory reading of . . . 12 U.S.C. § 92a."). Given this purpose, it appears that the statute was not enacted for the benefit of any particular identified class, other than arguably national banks.

Under the third Cort v. Ash factor we ask whether the implication of a private remedy is consistent with the underlying purpose of the statute -- to place national banks on equal footing with state banks in the performance of trust functions. In the enacting legislation (in what is now § 92a(k)), Congress created a detailed remedial provision. This section provides that in the event the Comptroller determines that a national bank unlawfully exercised the granted fiduciary powers, the Comptroller should, following specified procedures (i.e. by providing notice and a hearing), revoke the trust powers granted by statute. 12 U.S.C. § 92a(k)(1). If the bank's fiduciary powers were revoked subject to these procedures, the bank could then obtain direct judicial review by a federal appellate court. 12 U.S.C. § 92a(k)(2); 12 U.S.C. § 1818(h). We find that this carefully reticulated enforcement mechanism would not be enhanced by the implication of a private right of action. More

specifically, the Congressional grant of enforcement power to the Comptroller, head of the federal agency created and empowered by Congress to develop and exercise expertise in this area,[6] would not be furthered by allowing a court, as opposed to the Comptroller, to make the initial determination whether a bank had engaged in conduct inconsistent with the statute.

Under the fourth and final Cort factor we must ask whether the matter is one traditionally relegated to the states. One is hard pressed to imagine an area of law more traditionally a province of state law, than the law of trust and estates. Implying a private right of action under § 92a could effectively federalize a not insignificant portion of state trust and estate law, and burden federal courts with numerous cases involving disputes between trust beneficaries and national banks, a most untoward result. We do not believe that Congress could have intended such a result by its enactment of § 92a.[7]

---

[6]. See Central Nat'l Bank v. United States Dept. of Treasury, 912 F.2d 897, 905 (7th Cir. 1990) ("[B]anks are his [the Comptroller's] wards, and his only wards.").

[7]. Because we find that no private right of action exists for violations of § 92a, we need not address the validity of Corestate's claim that, in the area of trusts and estates, the federal court should abstain out of deference to the state Orphans Court's expertise. See Ryan v. First Pennsylvania Banking & Trust Co., 519 F.2d 572, 575 (3d Cir. 1975); Reichman v. Pittsburgh Nat'l Bank, 465 F.2d 16, 18 (3d Cir. 1972). However like the Fifth Circuit in Blaney, our decision is reinforced by the understanding that the law of trusts and estates is a primary matter of state concern. Blaney, 357 F.2d at 30.

In sum, all four Cort v. Ash factors militate against the plaintiffs' position.  Accordingly, we conclude that no private right of action should be implied under § 92a.

## IV. CONCLUSION

We will affirm the district court's order granting Corestate's motion to dismiss for failure to state a claim as to purported federal claims and for lack of subject matter jurisdiction as to all remaining claims.  Additionally, the district court's order denying plaintiffs motion to enjoin commencement of trust accountings in Pennsylvania Orphans' Court, which the plaintiffs have also appealed, will likewise be affirmed.

_____