FILED
United States Court of Appeals
Tenth Circuit

September 19, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GARRY FRANKLIN GARRETT,

Plaintiff - Appellant,

v.

RECONTRUST COMPANY, N.A.,

Defendant - Appellee.

No. 12-4060
(D.C. No. 2:11-CV-00763-DS)
(D. Utah)

---

ORDER AND JUDGMENT<sup>*</sup>

---

Before **GORSUCH**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

Garry Garrett appeals the dismissal of his Utah state-law claims related to the

nonjudicial foreclosure sale of his Utah residence by Defendant-Appellee ReconTrust

Company, N.A. ("Recon").  Garrett contends that Utah law prohibited Recon, a national

bank with no offices in Utah, from conducting a nonjudicial foreclosure sale in that state

under circumstances in which designated state entities are permitted to do so.  See Utah

Code Ann. §§ 57-1-21 & 57-1-23.  However, under the applicable federal banking

---

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

statute, 12 U.S.C. § 92a(a) & (b) (the "Statute"), the sale of Garrett's residence was governed by the law of the "State" where Recon was "located," as those terms are used in the Statute. We agree with the district court that, for the purposes of the foreclosure sale at issue, the regulations interpreting § 92a(a) & (b) dictate that Recon was "located" in Texas, where the sale was ostensibly legal. See Tex. Fin. Code §§ 32.001 & 182.001. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## DISCUSSION

The district court dismissed Garrett's case, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). We review the grant of a Rule 12(b)(6) motion to dismiss de novo. Gee v. Pacheco, 627 F.3d 1178, 1183 (10th Cir. 2010).

At the outset, we note that the law in this area is unsettled, with compelling arguments to be found on both sides. "This court, however, will not craft a party's arguments for him." Perry v. Woodward, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999). Our holding today reflects nothing more than our resolution of the arguments presented with respect to Garrett's claims that (1) under Section 92a's plain language, Utah law, not Texas law, governed the nonjudicial foreclosure sale of Garrett's residence, and (2) the Office of the Comptroller of the Currency (the "OCC") interprets Section 92a in a way that also dictates that Utah law, not Texas law, governed the sale. We disagree with both of these claims, and we address each in turn.

**I.      Section 92a**

2

As to Garrett's first claim, the parties do not dispute that Recon is a national bank, and that as such, its activities as trustee of a trust deed are governed by Section 92a of the Statute.  See 12 U.S.C. § 92a.  Section 92a reads, in pertinent part:

(a) Authority of Comptroller of the Currency

The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee . . . [,] or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

(b) Grant and exercise of powers deemed not in contravention of State or local law

Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

12 U.S.C. §§ 92a(a) & (b) (emphases added).

Garrett argues that Section 92a, by its plain language, dictates that Utah law, not Texas law, applied to the foreclosure sale of Garrett's residence.  We disagree.  While we think it safe to say that the "State" to which these provisions refer is the "State in which the national bank is located," Section 92a provides no direction as to the critical question: in which "State" is the national bank "located" where, as here, activities related to the foreclosure sale occur in more than one state?  See Citizens & S. Nat'l Bank v. Bougas, 434 U.S. 35, 44 (1977) ("There is no enduring rigidity about the word 'located.'").

3

Garrett counters that the meaning of these provisions becomes plain when the Statute is read as a whole, because the Statute reflects Congress's intent to incorporate the principle of "competitive equality." See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). Competitive equality is the concept that "national banks [should be] on an equal competitive basis with state banks and trust companies in the state where the national bank is situated." Blaney v. Fla, Nat'l Bank at Orlando, 357 F.2d 27, 30 (5th Cir. 1966).

Even assuming that the principle of "competitive equality" animates Section 92a, however, that principle would most reasonably be tied to the "State" in which the national bank is "located," leading to the same ambiguity as an isolated textual analysis of Section 92a. Because we conclude that Section 92a is ambiguous as to the "State" in which Recon was "located" under the circumstances presented here, we turn to the interpretive regulations promulgated by the OCC for guidance.

## II.     The OCC's interpretation of Section 92a

Congress has charged the Comptroller of the Currency with the enforcement of banking laws, Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 403-04 (1987), and it has authorized the OCC "to prescribe rules and regulations to carry out the responsibilities of the office," 12 U.S.C. § 93a; see also Clarke, 479 U.S. at 403-04 (recognizing the "great weight" which must be accorded the OCC's reasonable interpretations of banking laws).

4

Relevant here are the regulations at 12 C.F.R. § 9.7 ("Rule 9.7"), which the OCC

promulgated in 2001, pursuant to notice-and-comment rulemaking procedures, to

"address[] the application of 12 U.S.C. 92a in the context of a national bank engaging in

fiduciary activities in more than one state."  Fiduciary Activities of National Banks, 66

Fed. Reg. 34792 (July 2, 2001).  Importantly, Garrett raises arguments only as to the

meaning of Rule 9.7, and not to the reasonableness of the regulations themselves, see

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984);[1] thus,

we limit our inquiry accordingly.

Rule 9.7, entitled "Multi-state fiduciary operations," states, in pertinent part:

***

(b) Serving customers in other states. While acting in a fiduciary capacity
in one state, a national bank may market its fiduciary services to, and act as
fiduciary for, customers located in any state, and it may act as fiduciary for
relationships that include property located in other states. The bank may use
a trust representative office for this purpose.

---

[1] We granted the parties' joint request to file short supplemental briefs in response
to the Utah Supreme Court's recent decision in Fed. Nat'l Mortg. Ass'n v. Sundquist,
where the court held, among other things, that Rule 9.7 is an unreasonable interpretation
of Section 92a.  ---P.3d---, No. 20110575, 2013 WL 3804040, at *8-*10 (Utah July 25,
2013).  For the first time in this case, Garrett argues in his supplemental brief that the
OCC's interpretation of Section 92a is unreasonable.  However, Garrett failed to raise
this argument before the district court, provided no legally cognizable support for it in his
opening brief on appeal, and did not so much as mention it in his reply brief.  Thus, we
decline to consider it here.  See McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 999
(10th Cir. 2002) ("[A]bsent extraordinary circumstances [not present here], we will not
consider arguments raised for the first time on appeal."); Murrell v. Shalala, 43 F.3d
1388, 1389 n.2 (10th Cir. 1994) (stressing that "perfunctory" allegations of error that "fail
to frame and develop an issue" are insufficient to invoke appellate review).

(d) Determination of the state referred to in 12 U.S.C. 92a. <u>For each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship. A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets. If these activities take place in more than one state, then the state in which the bank acts in a fiduciary capacity for section 92a purposes is the state that the bank designates from among those states.</u>

(e) Application of state law—

> (1) State laws used in section 92a. The state laws that apply to a national bank's fiduciary activities by virtue of 12 U.S.C. 92a are the laws of the state in which the bank acts in a fiduciary capacity.

> (2) Other state laws. Except for the state laws made applicable to national banks by virtue of 12 U.S.C. 92a, state laws limiting or establishing preconditions on the exercise of fiduciary powers are not applicable to national banks.

12 C.F.R. § 9.7(b), (d) & (e) (emphasis added).

To be sure, Rule 9.7 arguably lends itself to more than one interpretation, and the parties, parsing the regulation's text and several interpretive letters promulgated by the OCC, offer several. But we need not dwell on the parties' speculation about "how the OCC interprets the meaning of . . . § 92a," Aplt. Br. at 15, as it pertains to the circumstances here. That is because, after oral argument, Recon submitted supplemental authority in this case, pursuant to Fed. R. App. P. 28(j), relaying that the OCC had expressly articulated its position on the subject in another case recently decided by this

6

Court.  See Brief for the Office of the Comptroller of the Currency as Amicus Curiae,

Dutcher v. Matheson, No. 12-4150 (10th Cir. argued May 8, 2013) [hereinafter Brief of

OCC].[2]  The OCC's interpretations of its own regulations are authoritative unless they are

"plainly erroneous or inconsistent with the regulation."  Decker v. Nw. Envtl. Def. Ctr.,

133 S.Ct. 1326, 1337 (2013).  That the OCC's interpretation of its own regulations

"comes to us in the form of a legal brief" does not detract from the deference owed

where, as here, the OCC's position is not a "post hoc rationalization advanced . . . to

defend past agency action against attack," Auer v. Robbins, 519 U.S. 452, 462 (1997).

    As an initial matter, we can reject Garrett's argument that Rule 9.7 is inapplicable

here because it applies only to "a trustee of an express trust with property in multiple

States," Aplt. Br. at 21.  The OCC made clear that Rule 9.7 applies to the foreclosure sale

at issue in this case, because it constitutes a scenario "in which a national bank [here,

Recon] conducts fiduciary business in more than one state [here, Utah and Texas]," see

Brief of OCC at 6.

    Next, the OCC turned to two questions presented by the panel in Dutcher, the

resolution of which all but resolves the remaining issues to be decided in this appeal.

First, the panel requested that the OCC address the following question:  "Under 12 C.F.R.

---

[2] In Dutcher, as here, the dispute centered on whether the Statute authorized Recon to conduct a nonjudicial foreclosure sale of a residence in Utah, even though Utah state law prohibits Recon from doing so.  Accordingly, the guidance the OCC provided in Dutcher is squarely on point here.

§ 9.7(d), what state does 12 U.S.C. § 92a 'refer[] to' when a national bank based in one state serves as the trustee of a trust deed on real property located in another state?"

The OCC replied that

> [t]he regulation makes clear that the state in which the bank <u>acts in a fiduciary capacity</u> for each fiduciary relationship is where the bank is "located" for purposes of 12 U.S.C. § 92a, and further identifies three fiduciary acts that are determinative of where the bank is "located" for a fiduciary relationship. They are the location where the bank: (1) accepted the fiduciary appointment; (2) executed the documents that create the fiduciary relationship; and (3) makes discretionary decisions regarding fiduciary assets. 12 C.F.R. § 9.7(d).

Brief of OCC at 8 (emphasis in original). The OCC then turned to the panel's second question: "If the state 12 U.S.C. § 92a 'refer[s] to' is not the state where the real property is located, may the national bank conduct a non-judicial foreclosure notwithstanding the fact that the state where the real property is located [does not allow entities like Recon to conduct non-judicial foreclosure sales]?" The OCC provided the following in response:

> Yes. A national bank otherwise authorized to exercise fiduciary powers under 12 U.S.C. § 92a pursuant to the laws of the state where it is "located" for purposes of the particular fiduciary relationship may transact business authorized as a result of its fiduciary status with respect to property that is the subject of the fiduciary relationship, even though the law of the state where the property is located restricts that activity to fiduciaries recognized under the law of the state where the property is located. <u>See</u> [the Federal Register p]reamble[, "Fiduciary Activities of National Banks," 66 F.R. 34792-01,] 34793, <u>supra</u> ("12 U.S.C. 92a does not subject the exercise of a national bank's fiduciary powers to restrictions or preconditions, such as licensing requirements, under state law."). <u>A national bank permitted to act as a foreclosure trustee under the laws of the state where it is located, here Texas, may act in that role in another state even though the laws of that state, here Utah, may limit eligibility to act as a fiduciary for that type of transaction to specific entities</u>. We note, however, that the national bank is subject to Utah requirements governing the conduct of the foreclosure,

8

including, for example, requirements pertaining to the notice that must be provided to the borrower.

Brief of OCC at 9 (emphasis added).

We conclude that the OCC's statements above resolve the parties' disputes over the OCC's interpretation of Section 92a.[3] The way the OCC sees it, a national bank is "located" in (and hence, permitted to act as a foreclosure trustee to the same extent as allowed by the laws of) the "State" where it "acts in a fiduciary capacity," which is determined using the "location where the bank: (1) accepted the fiduciary appointment; (2) executed the documents that create the fiduciary relationship; and (3) makes discretionary decisions regarding fiduciary assets." Brief of OCC at 8-9.

This about concludes our inquiry. In his briefing before us, Garrett does not persuasively argue that any of the three core fiduciary acts described in Rule 9.7(d) occurred in Utah. See Aplt. Br. at 24-25 (asserting, without legal support, that "the acts are performed in Utah" because certain documents must be filed in Utah and "the sale of the property takes place in the county where the property is located"); Reply Br. at 4-5 (making mostly conclusory allegations to the same effect). Garrett also appears to have conceded below that the relevant fiduciary acts took place in Texas. Specifically, in its motion to dismiss Garrett's claims, Recon argued directly from Rule 9.7 that (1) the documents creating the fiduciary relationship were executed in Texas, (2) Recon accepted

---

[3] Again, we stress that we offer no opinion on the <u>reasonableness</u> of the OCC's interpretation of Section 92a, because Garrett has not raised an adequate challenge on that ground.

9

the fiduciary appointment in Texas, and (3) it made all discretionary decisions relating to the sale in Texas. In his response, Garrett did not contest any of these points, and in fact failed even to mention Rule 9.7.[4] We see no reason in this case "to depart from the general rule that a federal appellate court does not consider an issue not passed upon below," In re Walker, 959 F.2d 894, 896 (10th Cir. 1992) (internal quotation marks omitted).

### III.    Conclusion

In conclusion, we reject Garrett's argument that Section 92a is clear and unambiguous, because the Statute provides insufficient guidance for determining, under the circumstances of this case, the "State" in which Recon was "located." To that end, the OCC has made clear in Rule 9.7 that Recon was "located" where it (1) accepted the fiduciary appointment; (2) executed the documents that create the fiduciary relationship; and (3) made discretionary decisions regarding fiduciary assets. 12 C.F.R. § 9.7(d). In this case, Garrett has never meaningfully contested that (1) Recon performed the three

---

[4] After the district court issued its order dismissing Garrett's claims, Garrett filed a Motion to Alter or Amend Judgment in which he argued, again without any legal support, that the three core "fiduciary capacity" acts enumerated in Rule 9.7 took place in Utah. Even if Garrett had adequately supported his argument in that motion so as to properly present it to the district court—and we doubt that he did so—Garrett never appealed the district court's order disposing of that motion, and so we construe his new argument raised for the first time therein to have been untimely. Cf. Anderson v. State Farm Mut. Auto. Ins. Co., 416 F.3d 1143, 1147 (10th Cir. 2005) (considering appellant's argument from an unappealed post-trial motion only because the "primary legal theory [underlying it] was before the district court when it dismissed [his] complaint").

acts enumerated in Texas, such that Recon was "located" there as that term has been construed by the OCC, and (2) Texas law permitted Recon to conduct a nonjudicial foreclosure sale of Garrett's residence.

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

11